IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JEFFREY SAMULSKI, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:24-cv-00583-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| W INTERNATIONAL SC LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R"), ECF No. 10, on defendant W International SC LLC's ("W International") motion to dismiss, ECF No. 5. For the reasons set forth below, the court adopts the R&R and grants W International's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.  BACKGROUND[1]

This case arises out of W International's employment and termination of plaintiff Jeffrey Samulski ("Samulski"). Samulski began employment with W International, an advanced metal fabricator operating in Goose Creek, South Carolina, as a Safety Coordinator on June 14, 2021, and was later retitled Environmental Health and Safety Coordinator. ECF No. 1-1, Am. Compl. ¶¶ 19–21, 22. On June 28, 2022, he discovered a female employee, Karrie Anderson ("Anderson"), in her welding booth without proper safety shoes. Id. ¶ 24. Samulski "tapped her toe with his boot toe and informed her that

---

[1] The R&R ably recites the facts as stated are amended complaint, but Samulski objects the R&R's interpretation thereof. Therefore, the court the recites the facts just as they are asserted in the amended complaint.

she was not wearing the proper safety shoes." Id.  Anderson became "visibly upset about being questioned" and, on June 30, 2022, reported the incident to human resources.  Id. ¶¶ 24–25.  She accused Samulski of harassment and maliciously invading her space in retaliation for being questioned about failing to wear the proper safety shoes."  Id. ¶ 25.

Samulski received an annual performance review on July 18, 2022, that "awarded [him] an additional forty hours of PTO for his exemplary performance." Id. ¶ 26.  On September 12, 2022, Samulski and a coworker, Scott Wilson ("Wilson"), notified W International's Safety Director, Arthur DiFilippo ("DiFilippo"), that "there was an ongoing mold issue in their new office".  Id. ¶ 29.  DiFilippo told Samulski and Wilson "he would take care of it," but DiFilippo never remedied the issue.  Id. ¶¶ 29–30.  Later that month, W International's Chief Operating Officer, Mark Schmitt ("Schmitt"), stopped Samulski and "thanked [Samulski] for all his hard work" and "informed [him] that he would be receiving a $3,000.00 raise due to performance."  Id. ¶ 33.

On October 6, 2022, Samulski went to Trident Technical College ("Trident Tech") to conduct a safety presentation for welding students.  Id. ¶ 35.  Samulski's supervisor approved the presentation, and he instructed Samulski to only "discuss trending OHSA recordable mishaps" and "answer any questions that the students/employees had about those safety issues."  Id. ¶ 34.  Samulski "addressed the safety concerns at W International," explaining that "[t]he purpose of the safety presentation" was to assure welding students who were seeking employment at W International that the safety issues were being resolved.  Id. ¶ 38.  Samulski answered all questions and concerns from the students and employees at Trident Tech truthfully, including those regarding W International's safety and human resources departments.  Id.

¶¶ 39–41.  While at Trident Tech, Samulski allegedly upset an instructor when he "pointed out several safety issues in the weld school area" that "needed to be addressed." Id. ¶ 36.

On October 7, 2022, Samulski's neighbor's son, who was "a student/employee at the weld school" at Trident Tech, told Samulski that his "visit at the school had caused quite a stir among the students in the class." Id. ¶ 36.  "[A]fter [Samulski's] discussion many of the students were demotivated" and one student "contacted W International and complained to human resources." Id. ¶ 45.  On October 10, 2022, Samulski's supervisor asked him to meet with human resources. Id. ¶ 46.  At the meeting, Samulski was given a letter stating that he was fired. Id. ¶ 47.  Though Samulski claims to have been unaware of any issues that occurred while at Trident Tech, the letter stated that he "violated the company conduct policy during a safety presentation at Trident Tech." Id. ¶ 48–49.  W International "refused to provide evidence" of the alleged policy violations. Id. ¶ 52.  Samulski had a second conversation with his neighbor's son after he was fired—on November 13 or 14, 2022—where he was informed that "the class had not provided any written statements," and Samulski "did not state anything negative during the presentation." Id. ¶ 55.

Samulski alleges that "other employees who were female and outside [his] protected category were treated more favorably," and that "female employees committed worse violations of policy and were not terminated." Id. ¶¶ 58, 64.  He further alleges that he "was discriminated against based on his sex," and that "each of the actions against [him] were in retaliation for his complaints." Id. ¶¶ 59, 63.  Samulski states that he "utilized any and all policies, procedures and laws at his disposal," and that W

3

International had "failed and refused to protect him from sexual discrimination and hostile work environment." Id. ¶¶ 60.

Samulski originally filed a complaint in the Court of Common Pleas for Berkeley County, South Carolina on December 27, 2023, and an amended complaint on December 28, 2024. ECF No. 1-1, Compl.; Samulski v. W Int'l, No. 2023-CP-08-03620 (Berkeley Cnty. Ct. C.P. Dec. 27, 2023). Samulski claims that W International (1) discriminated against him based on his sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., (2) terminated his employment in retaliation for reporting safety violations in violation of Title VII, (3) subjected him to a hostile work environment in violation of Title VII, and (4) wrongfully terminated him in violation of public policy for reporting violations of the law. Id. ¶¶ 78–124. W International removed the case to federal court on February 5, 2024. ECF No. 1. On February 12, 2024, W International filed a motion to dismiss seeking to dismiss Samulski's claims in full. ECF No. 5. On March 11, 2024, Samulski responded in opposition after requesting and receiving an extension of time to do so. ECF No. 8. W International replied on March 18, 2024. ECF No. 9. On April 15, 2024, Magistrate Judge Baker issued the R&R, in which she recommended that W International's motion to dismiss be granted. ECF No. 10, R&R. Samulski objected to the R&R on April 29, 2024, ECF No. 11, and W International replied to Samulski's objections, ECF No. 12, on May 13, 2024. Thus, this matter is fully briefed and ripe for the court's review.

## II.  STANDARD

### A.  Order on R&R

This court is charged with conducting a <u>de novo</u> review of any portion of the magistrate judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the magistrate judge.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 149–50 (1985).  In the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. <u>Diamond v. Colonial Life & Accident Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005). Analogously, <u>de novo</u> review is unnecessary when a party makes general and conclusory objections without directing the court's attention to a specific error in a magistrate judge's proposed findings.  <u>Orpiano v. Johnson</u>, 687 F.2d 44, 47 (4th Cir. 1982).

The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  <u>Mathews v. Weber</u>, 423 U.S. 261, 270–71 (1976).  The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).

### B.  Motions to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion to dismiss "challenges the legal sufficiency of a complaint." <u>Francis v. Giacomelli</u>, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); <u>see also</u> <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) does not resolve contests surrounding the facts, the merits of

a claim, or the applicability of defenses.").  Though Federal Rule of Civil Procedure
8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is
entitled to relief" to be legally sufficient, "a formulaic recitation of the elements of a
cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A
Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can
prove no set of facts that would support his claim and would entitle him to relief.  Mylan
Lab'ys, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

　　　　When considering a Rule 12(b)(6) motion to dismiss, the court should accept all
well-pleaded allegations as true and should view the complaint in a light most favorable
to the plaintiff.  E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th
Cir. 2011).  However, "the tenet that a court must accept as true all of the allegations
contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556
U.S. 662, 678 (2009); see also E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d
175, 180 (4th Cir. 2000) ("The district court need not accept as true unwarranted
inferences, unreasonable conclusions, or arguments.").  "To survive a motion to dismiss,
a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to
relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S.
at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged."  Id.; see also Decoster v. Becerra, No. 22-1931, 2024 WL 4363612,
at *2 (4th Cir. Oct. 2, 2024) ("[A] plaintiff must provide sufficient detail to show that he
has a more-than-conceivable chance of success on the merits." (quoting Upstate Forever

v. Kinder Morgan Energy Partners, L.P., 887 F.3d 637, 645 (4th Cir. 2018))), vacated on other grounds, 140 S. Ct. 2736 (2020).

### III. DISCUSSION

The R&R recommends that the court grant W International's motion to dismiss on each of Samulski's causes of action. R&R at 5. The magistrate judge reasoned that Samulski's had failed to satisfy the pleading standards for a valid sex discrimination, retaliation, and hostile work environment claim under Title VII because he did not plead sufficient, plausible facts to establish a violation of the statute. Id. at 5–11. Specifically, the R&R identified that Samulski's amended complaint contained no factual allegations that (1) similarly situated employees outside of his protected class received more favorable treatment, (2) Samulski suffered retaliation for opposing an unlawful employment practice, or (3) Samulski experienced unwelcome conduct imputable to his employer, W International. Id. The magistrate judge also recommended dismissal of Samulski's cause of action for wrongful termination in violation of public policy because Samulski had an existing statutory remedy under Title VII for wrongful termination and his termination did not fit a recognized public policy exception. Id. at 12–14.

Samulski lodges four objections, in correspondence to each cause of action, asserting generally that the R&R's recommendations "are based on errors of law and facts." See ECF No. 11. To each of his claims, Samulski argues that "the magistrate [judge] has failed to follow the law regarding motions to dismiss."[2] ECF No. 11 at 6.

---

[2] Samulski likewise states that the magistrate judge has "failed to construe the factual allegations in a light most favorable to the plaintiff in accordance with the law" and "failed to address the specific facts that present claims clearly." ECF No. 11 at 5. None of these objections can be categorized as specific enough to warrant de novo review by the court because each is a generalized and conclusory. Samulski has strung together

Without analysis, Samulski layers case law citations, restates the facts of the amended complaint, and reasserts the conclusory legal allegations that the magistrate judge found could not support any of his legal claims.  See id.  In substance, the thrust of each of Samulski's objections are general disagreements with the findings, conclusions, and recommendations of the R&R.  See id.

When liberally construed, Samulski's objections to the R&R's recommendation to dismiss his claims for sex discrimination, retaliation, and hostile work environment under Title VII can be read to assert that the magistrate judge improperly applied the Rule 12(b)(6) motion to dismiss standards and erred in interpreting the facts of the amended complaint.  See id. at 5–10.  In regard to his claim for wrongful termination in violation of public policy, Samulski objects to the magistrate judge's determination that the public policy exception does not extend to internal reports of safety violations.  See id. at 10.  Thus, the court will analyze each of Samulski's objections to the extent they relate to the magistrate judge's four recommendations.

### A.  Objection One: Sex Discrimination[3]

Title VII states that employers cannot "discriminate against any individual with respect to [his or her] compensation, terms, conditions, or privileges of employment because of such individual's" race or sex.  42 U.S.C. § 2000e-2(a)(1).  When a plaintiff fails to produce direct evidence of discrimination, the plaintiff must proceed under the

---

piecemeal disagreements worded in Rule 12(b)(6) principles without detail or analysis as to any specific defect in the magistrate judge's factual or legal reasoning. Plainly, Samulski's objections state no more than "I object" to the magistrate judge's conclusions and recommendations.  See Elijah v. Dunbar, 66 F.4th 454, 460 (4th Cir. 2023).

[3] Because Samulski does not contest the magistrate judge's recitation of the law regarding Title VII sex discrimination, or, as the court later explains, motions to dismiss, the court recites the relevant law as it appears in the R&R.  See ECF No. 10 at 5–6.

McDonnell Douglas "burden-shifting" framework.[4]  See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

At the motion to dismiss stage, "a Title VII plaintiff claiming sex discrimination without direct evidence must show: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and[,] (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).  A Title VII employment discrimination plaintiff is not required to plead a prima facie case of discrimination to survive a motion to dismiss. Bing v. Brivo Sys., LLC, 959 F.3d 605, 616 (4th Cir. 2020) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002)) (emphasis added).  "Instead, a Title VII plaintiff is 'required to allege facts to satisfy the elements of a cause of action created by that statute.'"  Id.  (quoting McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015)).

The court's inquiry to determine if a plaintiff has pleaded sufficient facts to establish a violation of Title VII is "whether [the plaintiff] alleges facts that plausibly state a violation of Title VII 'above a speculative level.'"  Id. (quoting Coleman, 626 F.3d at 190).  Simply stated, the court does not require proof of all the elements of a prima facie case of discrimination but requires that plaintiffs plausibly meet these elements.

---

[4] The magistrate judge found that, even viewing the well-pleaded factual allegations favorably, Samulski has put forth no direct evidence of discrimination.  The court agrees.  Further, Samulski makes no reference to nor provides any analysis of his claims under the McDonnell Douglas burden shifting framework.  Samulski's disagreement with the finding that he has not established a prima facie case is misplaced because he fails to mention the exact legal mechanism that would provide a court with the foundation to review his claim for discrimination.

See id. at 617 n.8 (recognizing the elements of a prima facie case of discrimination under Title VII).

### 1. Legal Objection

Samulski objects that the magistrate judge did not adhere to the law regarding Rule 12(b)(6) motions to dismiss because the "magistrate failed and refused to consider" Brooks v. City of Winston-Salem, N.C., 85 F.3d 178 (4th Cir. 1996). ECF No. 11 at 5–6. The Fourth Circuit's ruling in Brooks states that "dismissal is inappropriate unless, accepting as true the well-pleaded facts in the complaint and viewing them in the light most favorable to the plaintiff, it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Brooks, 85 F.3d at 181 (quoting Mylan Lab, 7 F.3d at 1134 & n. 4)).

Samulski's dependence on Brooks, as well as the long list the other legal authorities cited in his objections, is misguided. To be clear, Samulski has substantiated his argument that the magistrate judge utilized an incorrect standard for Rule 12(b)(6) motions to dismiss by providing a citation to the exact standard used by the magistrate judge to recommend dismissal of all four of his causes of action. See R&R at 5; ECF No. 4–5. Samulski's objection that the magistrate judge "failed to follow the law regarding motions to dismiss" falls well short of persuasion. In effect, Samulski does not object, but agrees, to the magistrate judge's articulation of the law governing Rule 12(b)(6), and the court finds the magistrate judge's recitation of the law in respect to Rule 12(b)(6) motions to dismiss to be correct.

### 2. Factual Objection

Samulski objects to the magistrate judge's conclusion that he has not established a prima facie case of sex discrimination under Title VII.  R&R at 6; ECF No. 11 at 6.  He asserts that the magistrate judge committed "an error interpretation" (whatever that means) by finding that Samulski had not sufficiently alleged facts that similarly situated employees outside his protected class received more favorable treatment.  Id.  The magistrate judge recommended dismissal of Samulski's sex discrimination claim for "failure to allege facts that similarly situated employees outside his protected class received more favorable treatment."  R&R at 6.

Although Samulski is not required to plead a prima facie case of sex discrimination to survive a Rule 12(b)(6) motion to dismiss, he must plead enough facts to meet each element of his claim.  See Bing, 959 F.3d at 616.  Samulski's burden is to "plausibly state a violation of Title VII above a speculative level."  See id. at 617 n.8.

Samulski argues, after again restating the same pleading standards as the magistrate judge, that he has pleaded "all that is required as set forth in . . . Thowmbly [sic] . . . and Iqbal."  ECF No. 11 at 7.  To rebut the magistrate judge's finding that he has failed to present evidence of female comparator employees, Samulski states that the following factual allegations are sufficient to establish his sex discrimination claim: "I was treated differently than my female counterparts," "Other females were treated more favorably," "an individual who failed to wear proper safety gear was not disciplined," and "fferential [sic] treatment."  Id.  Samulski further urges the court that he has "clearly set forth that other female employees were not disciplined for violations of alleged policy as he was terminated for."  Id.

The court agrees with the R&R and, like the magistrate judge, finds that Samulski neither established a prima facie case of sex discrimination nor plausibly stated a violation of Title VII.  See R&R at 5–8.  Here, Samulski's objections to the factual interpretation of the magistrate judge's R&R are recycled—almost verbatim—from his amended complaint and brief in response to W International's motion to dismiss. Compare Am. Compl. ¶ 14, with ECF No. 8 at 12, and ECF No. 11 at 7.  Samulski's claim for sex discrimination is based on his allegation that similarly situated female coworkers received different disciplinary treatment.  He has plainly established membership in a protected class, satisfactory job performance, and that he was terminated.

Upon review of Samulski's pleadings and objections, it is clear that he has provided no factual support for the fourth element of his sex discrimination claim.  The magistrate judge properly found that Samulski failed to identify female comparators, assert that any female comparator engaged in comparable prohibited conduct, or that any female comparator held the same position, performed the same work, and were under the same supervision as Samulski.  See R&R at 6.

The court has been provided only bare allegations and conclusory legal assertions without factual support for its analysis.  Samulski's repeated, groundless assertions that he has established a "prima facie case" are unpersuasive uses of talismanic legal language that do not move the needle from speculative possibility to sufficient plausibility for his claim of sex discrimination.  See Iqbal, 556 U.S. at 676–79; Twombly, 550 U.S. at 556. Without facts alleging even a single female comparator, Samulski has not met the pleading standard required for a sex discrimination claim under Title VII.  See Coleman,

626 F.3d at 190–91 (affirming Rule 12(b)(6) dismissal of Title VII claim because "the complaint fails to establish a plausible basis for believing [that the plaintiff's colleague] and [the plaintiff] were actually similarly situated or that race was the true basis for [the plaintiff]'s termination").  Therefore, Samulski's first claim fails, and the court adopts the R&R's recommendation that Samulski's Title VII sex discrimination claim be dismissed.

### B.  Objection Two: Retaliation

Samulski's second objection contests the magistrate judge's recommendation that his cause of action for retaliation under Title VII be dismissed.  R&R at 10.  A claim for retaliation under Title VII requires the plaintiff to allege sufficient facts to show that his "employer . . . discriminat[ed] against [him] . . . because he has opposed any practice made an unlawful employment practice by [Title VII]."  42 U.S.C. § 2000e-3(a).  "Title VII's antiretaliation provision prohibits an employer from discriminat[ing] against any of his employees' for engaging in protected conduct."  Thompson v. N. Am. Stainless, LP, 562 U.S. 170, 174 (2011) (quoting Burlington N. & S.F.R. Co. v. White, 548 U.S. 53, 62 (2006)) (internal quotation marks omitted).  Thus, employers are prohibited from discriminating against their employees for engaging in protected conduct and any action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id.  A plaintiff alleging Title VII retaliation need not specifically articulate every element of his prima facie case to survive a Rule 12(b)(6) motion to dismiss.  See Swierkiewicz, 534 U.S. at 510 (noting that prima facie case "is an evidentiary standard, not a pleading requirement").  However, he is "required to allege facts to satisfy the elements of a cause of action created by [the] statute."  See McCleary-Evans, 780 F.3d at 585.

In his objection to the R&R, Samulski contends that he "has clearly set forth facts to support a claim for protected activity". ECF No.11 at 8. Samulski further argues that the court failed to consider facts alleging that he "went to management about differential treatment based on sex that was not addressed." Id. Reviewing the factual allegations of the amended complaint, Samulski lists, in relevant part, that he "reported various safety violations" regarding mold in his office to his supervisor and that he was "retaliated against when he reported discrimination, hostile work environment, failed to follow proper protocols, etc." Amend. Compl. at 8, 11, 12. Additionally, Samulski claims that he "complained of discrimination based on sexual discrimination" and "as a result of [his] complaints [that Samulski] suffered retaliation for each of his complaints." Id. at 14.

Where a party simply "fills in the blanks" or recites of the elements of a cause of action but goes no further to provide factual support in his pleadings or objections, he has not pleaded sufficiently plausible facts to establish a violation of Title VII. See Bing, 959 F.3d at 616. To satisfy the elements of a cause of action created by Title VII, a plaintiff must do more than recite those elements in their pleadings. McCleary-Evans, 780 F.3d at 585. Thus, when a party cannot provide the court with grounds for his entitlement to relief, his claims are merely speculative, fall below the requisite pleading standards, and cannot survive a motion to dismiss. See Twombly, 550 U.S. 555. The court agrees with the R&R and, like the magistrate judge, finds that Samulski has not sufficiently pleaded facts from which the court could infer that Samulski suffered retaliation. See R&R at 9. Samulski has only pleaded that he engaged in protected conduct in opposition to an unlawful employment practice—he claims to have reported sex discrimination. ECF No.

14

11 at 8.  His amended complaint and objection go only as far as to provide the court with bare, unsubstantiated claims that simply restate the elements for a Title VII retaliation claim.  See id.; Amend. Compl.  The court can find no place in which Samulski describes the alleged discriminatory or disciplinary treatment in any detail greater than Samulski simply identifying it as "sex discrimination".  See Amend. Compl.  Further, Samulski fails to describe the time, content, context, and to whom he allegedly complained about the sex discrimination.  See id.  In substance, Samulski's objection provides no greater factual support than his deficient amended complaint.  He does not provide the court with any further factual support for his claims and does not articulate any defect in the magistrate judge's factual interpretation or legal analysis.  See id.

Samulski's allegations do not rise to the level of sufficiently plausible under the pleading standards where he only posits "formulaic recitation of the elements" of his Title VII retaliation claim.  See Twombly, 550 U.S. 555.  The court is under no obligation to accept Samulski's legal conclusions that he was subjected to unlawful retaliation.  Iqbal, 556 U.S. at 678.  The facts, viewed in a light most favorable to Samulski, and inferences, drawn in Samulski's favor, are insufficient to give rise to a plausible cause of action for Title VII retaliation.  Therefore, Samulski's second claim fails, and the court adopts the R&R's recommendation that Samulski's Title VII retaliation claim be dismissed.

### C.  Objection Three: Hostile Work Environment

Samulski's third objection takes aim at the magistrate judge's recommendation that his cause of action for hostile work environment under Title VII be dismissed.  See R&R at 10–11.  The magistrate judge found that "the amended complaint is devoid of

15

allegations that could support a valid Title VII hostile work environment claim." Id. A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). At this stage, an employment discrimination plaintiff need not plead a prima facie case of discrimination. Bing, 959 F.3d at 616. To survive dismissal of a claim of a hostile work environment based on protected characteristics, a plaintiff must offer facts that plausibly support inferences that he experienced: "(1) unwelcome conduct, (2) based on [his] . . . sex, that was (3) severe or pervasive enough to make [his] work environment hostile or abusive and (4) imputable to . . . [his] employer." Decoster, 2024 WL 4363612, at *3; Bazemore v. Best Buy, 957 F.3d 195, 200 (4th Cir. 2020) (citing Boyer-Liberto v. Fontainbleau Corp., 786 F.3d 264, 277 (4th Cir. 2015)). Though not required to state a prima facie case of hostile work environment, a plaintiff must allege facts to satisfy the elements of the cause of action in order to plausibly state a violation of Title VII. Bing, 959 F.3d at 616.

The Fourth Circuit has held that "in order to prove the second element, a plaintiff must show that 'but for' the employee's sex, he or she would not have been the victim of the discrimination. Pueschel v. Peters, 577 F.3d 558, 565 (4th Cir. 2009). The third element of a hostile work environment claim "requires a showing that the environment would reasonably be perceived, and is perceived, as hostile and abusive." Boyer-Liberto, 786 F.3d at 277. The degree of hostility or abuse to which Plaintiff was exposed must be determined by "examining the totality of the circumstances." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir. 2001) (referencing Harris, 510 U.S. at 23). Relevant

considerations "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. The Fourth Circuit has set "a high bar in order to satisfy the severe or pervasive test." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008).

Samulski's objection to the R&R states that a Title VII hostile work environment plaintiff is not required to present every element of his claims but only plausible facts for which relief can be granted." ECF No. 11 at 9. He argues that the magistrate judge did not look at the "compilation of all the acts that show a behavioral pattern from the supervisor" and that "at the end of his employment he was subjected to a hostile work environment from human resources and his supervisors for his reports." Id. Samulski contends that he has presented two theories for hostile work environment: "hostile work environment based on his sex" and "retaliatory hostile work environment" Id.

Samulski's claim for Title VII hostile work environment cannot survive a motion to dismiss because he has not satisfied the requisite pleading standards that require him to state at least a plausible claim. See Decoster, 2024 WL 4363612, at *4. He asserts only legal conclusions rather than sufficient factual allegations to satisfy the elements of a Title VII hostile work environment cause of action. Bing, 959 F.3d at 616. Samulski premises a claim for hostile work environment on his allegations of sex discrimination and retaliation. See ECF No. 11 at 9. As the court has previously found, Samulski does not substantiate either claim in the amended complaint or his objections. Like the R&R, the court cannot reasonably infer that Samulski suffered sex discrimination or retaliation from his bare allegations. See R&R at 8, 9. There is no factual basis for Samulski's

17

claim that he was subject to discriminatory discipline because he is a male.  <u>See</u> Amend. Compl. at 5–12.  Nor does Samulski detail that he complained of the either of the alleged incidents of sex discrimination or subsequent retaliation for complaining of the sex discrimination.  <u>Id.</u>  Thus, logically, both claims cannot be grounds to for Samulski to assert that he was subjected to "unwelcome conduct" that was "based on [his] sex".  <u>See</u> <u>Scott v. Ameritex Yarn</u>, 72 F. Supp. 2d 587, 591 (D.S.C. 1999) (citing <u>Meritor Sav. Bank v. Vinson</u>, 477 U.S. 57, 68–69 (1986)).

Likewise, Samulski has not sufficiently pleaded facts to support a finding that his employer's conduct was "severe or pervasive enough to make [his] work environment hostile or abusive."  <u>Boyer-Liberto</u>, 786 F.3d at 277.  To do so, he must have at least shown he was subject to "an abusive working environment."  <u>Pueschel</u>, 577 F.3d at 565 (quoting <u>Harris</u>, 510 U.S. at 22).  Upon review of the amended complaint, the court can find no place which Samulski described his working environment—either before the alleged discrimination or at the time of the alleged retaliation.  Importantly, Samulski makes no mention of the conditions of his working environment, interactions with coworkers, or any discriminatory or retaliatory discipline from supervisors during the four months between time that he was reported to human resources for alleged harassment of a female coworker and his ultimate termination from employment.  Amed. Compl. ¶ 25–47.  Nor does Samulski make any statement or observation in regard to his perception of hostility or abuse from his employer or coworkers during the four days between the time that he allegedly violated his employer's conduct policy and his ultimate termination from employment.  <u>Id.</u>

Examining the totality of the circumstance, Samulski's amended pleading and objections do not satisfy the elements of a Title VII hostile work environment claim. Samulski's bare assertions and lack of factual support do not plausibly state a violation of Title VII. Therefore, Samulski's third claim fails, and the court adopts the R&R's recommendation that Samulski's Title VII hostile work environment claim be dismissed.

### D. Objection Four: Wrongful Termination in Violation of Public Policy

Samulski's fourth objection contests the magistrate judge's recommendation that his cause of action for wrongful termination in violation of public policy be dismissed. See R&R at 12–14. The magistrate judge concluded that, since Samulski had a statutory remedy for his termination under Title VII, the public policy exception did not extend to his termination,[5] and that the circumstances of Samulski's discharge did not fit within the recognized bounds of the exception. Id. In rebuttal, Samulski asserts that the "wrongful termination cause of action has nothing to do with the Title VII complaints," but rather relates to "his complaints regarding safety." ECF No. 11 at 8.

The public policy exception permits an at-will employee to bring a cause of action in tort for wrongful termination "where there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy." Barron v. Lab. Finders of S. C., 713 S.E.2d 634, 637 (S.C. 2011). South Carolina law explicitly provides for actions of wrongful termination in violation of public policy to circumstances "where the employer (1) requires the employee to violate the law, or (2) the reason for the employee's termination is itself a violation of criminal law." Trahey v. Grand Strand

---

[5] "The public policy exception does not . . . extend to situations where the employee has an existing statutory remedy for wrongful termination." Barron v. Labor Finders of S. Carolina, 713 S.E.2d 634, 637 (S.C. 2011).

Reg'l Med. Ctr./HCA Healthcare, Inc. Parallon, 2023 WL 2643833, at *2 (D.S.C. Mar. 27, 2023) (quoting Lawson v. S.C. Dep't of Corr., 532 S.E.2d 259, 260 (S.C. 2000)). The public policy exception is not limited to violations of those two situations, "but rather applies to 'any violation of a clear mandate of public policy.'" Desmarais v. Sci. Rsch. Corp., 145 F. Supp. 3d 595, 598 (D.S.C. 2015) (citing Culler v. Blue Ridge Elec. Coop., Inc., 309 S.C. 243, 422 S.E.2d 91, 92–93 (1992)). In declining to extend the public policy exception further, the South Carolina Supreme Court has held that "it may be regarded as well settled that a state has no public policy, properly cognizable by the courts, which is not derived or derivable by clear implication from the established law of the state, as found in its Constitution, statutes, and judicial decisions." Id. (quoting Batchelor v. Am. Health Ins. Co., 107 S.E.2d 36, 38 (S.C. 1959)).

As the R&R correctly states, courts in this district have repeatedly declined to allow plaintiffs to make a claim for wrongful termination in violation of public policy based upon internal reporting of alleged violations of laws or regulations. See, e.g., Trahey, 2023 WL 2815469, at *4 (dismissing wrongful termination action and declining to extend the public policy exception to an employee claiming he was wrongfully terminated because he internally reported HIPPA violations); Desmarais, 145 F. Supp. 3d at 600 (dismissing wrongful termination action and declining to extend the public policy exception to an employee claiming he was wrongfully terminated because he reported his employer's violation of FAA regulations). The case law can speak no clearer: "there is no clear mandate of public policy supporting wrongful termination in violation of public policy claims of employees who report the alleged illegal conduct of their coworkers." Desmarasis, 145 F. Supp. 3d at 600.

Samulski's amended complaint and objection do not point the court to any clear mandate of public policy in support of internal reporting of workplace safety violations. The court finds that Samulski's claim of wrongful termination in violation of public policy fails as a matter of law.  Therefore, Samulski's fourth claim fails, and the court adopts the R&R's recommendation that Samulski's wrongful termination in violation of public policy claim be dismissed.

### IV.  CONCLUSION

For the foregoing reasons the court **ADOPTS** the R&R and **GRANTS** W International's motion to dismiss.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**October 3, 2024**
**Charleston, South Carolina**